Good morning, your honors. My name is Karen Bucher. I represent the appellant, Philip Peterson. And this is the case where the defendant was convicted of shooting and killing the deputy from his trailer. Mr. Peterson argues in his case that his right to impartial jury was violated when the trial court denied his motion to change venue. Counsel, I had trouble seeing that. As I understand it, the county has 60,000 people or so. That's correct. And this is a new cop who doesn't, he's not an old timer that everybody knows there. Sixty thousand, I guess if you're from San Francisco or L.A., it sounds big. Or it sounds small. In Alaska, it sounds big. I don't see why there would necessarily be a need for a change of venue. It didn't look like the publicity was overwhelming. It looked like it had all petered out before the trial. And it didn't look like this was a cop that everybody knew and he was a hero to the county. Your honor, I found that answer in the media itself. When they focused on the community suffering, and I read some headlines that said, the children may be traumatized and will need mental services. And then they offered news stories. Talking about the news stories roughly, what, ten months before or something? It was actually a year and a half before. A year and a half before the trial? Shockwave through the community. The whole community knows about this. They're hurting. There's healing services for the community. What happened in the voir dire? Was there any indication of shock and hurting and stuff? There were some of the prospective jurors that remembered and said that he was guilty. They remembered it? Yes, some did. Some remembered vaguely. I think most of them did. Some vaguely. It was different. It was varying degrees. Was there anything in the record to show that there was still a whole lot of emotional upset that was affecting the panel? No, counsel submitted three newspaper articles that were just published right before the trial, but it was not made part of the record. You can't do like in England where they prohibit the newspapers from covering criminal trials until they're all over. I'm sorry, Your Honor. In England, the newspapers are not allowed to cover criminal trials until they're all over. I didn't know that. But we can't do that. There's always something in the paper. What I'm looking for is something that would create such tremendous community bias that there wouldn't be a trial in the place where the crime took place. Here's what I'm trying to articulate through these newspaper articles. Another one said, the deputy's death is another blow to weary residents. The community is required to begin the recovery process. Everything is focused on the community, which is the jurors itself. The entire community is separate. Here's my problem. By your standards, I'm from Fairbanks, Alaska, about 35,000 people in the town, maybe 90,000 in the whole market area that's served by the town, people from 100 miles away that drive in once every week or two to shop. And if I understand your argument, we could never try a criminal case in Fairbanks. Obviously, we do try criminal cases in Fairbanks, lots and lots of them, and they go fine. The juries are fair. People that are close friends with the widow or something, you let out during the voir dire, and pretty much everyone else is fair. I don't get it. I would agree with you, Your Honor, if the newspapers were factual. Not all of these ñ not everything in the newspapers was factual. It went towards emotions. Like during the arraignment, there was an article that said six deputies all wearing black bands across their badges in memory of the officer stood guard, and they were swallowing while the charges were being read. Another article said during the arraignment ñ When a policeman gets killed, it's traditional that all the policemen honor the deceased policeman, but that doesn't mean that anyone else does or cares. Well, let's put it this way. In the Daniel v. Woodford case, there were 3,000 people that attended the funeral of the officer. And in the Riverside ñ this happened in Riverside County, and there's 1.1 million people in Riverside County. And if you do the math and you equate the 900 people that went to this officer's funeral in Yuba County, that's equivalent of 18,000 people in Riverside County. So there was a lot of emotional outpouring to this family. Could I ask you just about the procedural posture of this issue? And I was trying to figure that out for all of these claims. This issue was raised with the State Habeas Court, which then cited ñ rejected it and cited Terry and Bauer, which are procedural bar cases. So is this claim then procedurally barred by the State Habeas Court's decision? No, it's not, because the magistrate judge made a specific finding that, yes, it was denied procedural grounds in the State court, but the government did not object to it and it was waived in the district court. So the district court judge is saying that ñ or the magistrate judge is saying that now we can review this independently, which brings me to another thing. This is one of the rare times I could say that this case is not covered by the AEDPA, you know, the constraints of the AEDPA, and you're free to review this independently. Because there's no reasoned decision in this case. Now, we have this case, Wynton v. Merkle, which says that in cases where the State hasn't raised the procedural bar, that that's something we can consider and should consider raising sua sponte. Why shouldn't we do that in this case, since basically what the State Habeas Court said was these issues should have been raised on your direct appeal? Your Honor, I'm sorry. I'm not familiar with that case. I can't respond directly. All I can respond is to what the district court found. They found that the government had waived the ñ you know, any objection to the procedural default and, therefore, it may proceed to be reviewed independently. And that's with all the claims except for the insufficiency of evidence claim in this case. And there's no further questions on the change of venue. Just a comment on the jury instruction issue. The defendant was charged with a special allegation, whether or not he should have known the police officer ñ I mean, the victim was a police officer. And the defense wanted to add in the instruction that the jury was allowed to consider his mental state. Didn't he get a separate mental state instruction? The State court found that the jury was so instructed. But the jury was instructed on the ñ on the mental impairment issue. When the judge was instructing the jury on the mental state of the act, the crime itself, the murder itself, it had nothing to do with the special circumstances. After that instruction was completed, about 10 pages later, which is about 10, 15 minutes later, the judge commences the instruction on the special finding or the special circumstance. In that instruction, he did not mention anything regarding the mental state that the victim. The judge just said that the instructions were ñ the jury had to find that Peterson knew or reasonably should have known that the victim was a police officer. And you can tell that the jury felt that it was constrained from considering the defendant's mental state by the jury note that it wrote to the court. From there, you can glean that they felt as though he really didn't know. But based on the objective reasonable person standard, he should have known. And that's how they found him. They found that finding true based on the reasonable person standard, not because they ñ Let's look together at the instructions that you're raising the question about. Make sure we're all understanding. I'm sure you have a yellow tab on it. I do. Okay. The first instruction regarding the specific intent is found on 310. And at the very end of this instruction, the court says ñ well, I'll read it. You should consider this evidence solely for the purposes of determining whether the defendant actually formed the required specific intent, premeditated and deliberated, or harbored malice a for thought, which is an element of the crime first degree murder, or formed the specific mental state ñ Wait a minute. I'm behind you. I just looked at 310, and I got a newspaper clipping. There's just so much stuff here, it's hard to find anything. Volume 2, ER 310. Or formed the specific mental state included in the definition of the crime and or any lesser included crime. And here's the clincher that and or any special finding you're instructed to make. That's where the state court hung its hat on, that the jurors could use the mental state or the mental impairment of the victim to decide whether or not he knew the victim was a police officer. The police officer instruction starts on page 321 to 322. And it doesn't state anywhere in there that the jury is allowed to use his mental impairment, which, by the way, was very severe. It seems like the kind of thing that the lawyers would argue about in closing argument. And if the prosecutor didn't think the defense could make that argument, he'd shut him down with an objection sustained. I'm sorry. I'm not following your question. It's not clear to me from the instructions that that argument could not be made. Well, you know, if I understand what you're saying here, California law provides that the jury may consider mental impairment, whether a finding is true or not, whether the defendant knew that the victim was a police officer. If he has a mental defect, they can take that into consideration. Did he really know? And this claim can be reviewed independently as well. Thank you, counsel. Thank you. May it please the Court. Craig Myers with the California Attorney General's Office, full respondent. In this case, a petitioner was found guilty of second-degree murder of a peace officer. In my opinion, this should have been a first-degree murder case, and petitioner was fortunate to come away with just a second-degree murder, yet he comes here. Can you talk about that jury instruction issue? Sure. Of course. The jury was instructed with CALJIC number 8.35, which talks about the murder of a peace officer and talks about how the defendant must have known or reasonably knew that the person was a peace officer and engaged in their duties. Tell me what instructions the judge gave about mental state, where they are in the excerpt, so we can read them, and what words they use. Sure. Well, counsel just read them on page ‑‑ she was correct. I was reading along page 310 in volume 2 of the excerpts of record, and it starts on page 310 on line 12. And I'm not going to read it all again, but the first line that she did not read says, you have received evidence regarding a mental defect or mental disorder of the defendant at the time of the commission of the crime charge. It goes on to say that you can consider this when you consider whether they formed a specific mental state or any lesser-included crime or any special finding. The special finding was whether the defendant, or petitioner in this case, knew or reasonably should have known that the officer was a peace officer engaged in his duties at the time. So as every court that has heard this argument has held, the instruction that they were requesting, because they request a special instruction to be added, was given. It would have been a cumulative, and it would have just confused the jury in this case. Go ahead. I'm sorry.  I thought this was addressed by the state appellate court on the merits, and they made a determination. Is that correct? Or what is our standard of review for this issue? This is one of those cases where the petition came as 209 pages with cut and paste. It was very difficult to go through the actual claims in the petition. The magistrate judge did make a finding that only the sufficiency of the evidence had been a thorough, reasoned decision by the state court and was going to apply the ADAPA for that one because that had been brought up in the Third District Court of Appeal, which had gone to the Supreme Court. For the other petitions that he had filed, some were rejected on procedural grounds. Some were gone through and given reasoned decisions. I'm not exactly certain about this one. I have taken the position that since we got the FNRs that that was going to be out of the ADPA in this case because of what the magistrate had ruled in this case, which in going through and deciding how it was going to approach this case was a reasoned decision on my behalf because the merits of the case didn't warrant. I mean, there's no validity to the merits of the case anyway in this case. So if the court rules that we have waived our procedural defaults, that's fine. That's what the magistrate held, and I'm not taking an issue with the magistrate held in that case because especially on the Calgic instruction, which is basically a state law question of jury instructions anyway, but we went on and addressed it because everything that they're asking for was given, and that's the best that you could find in the records. Right there in the record, talking about mental defect, mental state, mental retardation, borderline in this case, we had doctors and friends testify as to his mental state. The jury had all that information, and they were instructed specifically when they could consider that information, which was to the mental state of first degree murder, the lesser included offenses, and the special circumstances, which was specifically whether he knew or reasonably should have known this was a peace officer. So your position is that we should review all of these claims de novo, not under AEDPA? With the exception of the sufficiency of the evidence claim. Your Honor, you did mention a Whitman case which said that you can apply it, and I would be of the position that fine, that would be great. If the court wants to apply it, I could do supplemental briefing on it and do the work for you and actually go back of what was brought before the courts and what's procedurally defaulted. I don't understand something you just said. As I recall, we had quite a lot of cases before AEDPA became the law, and as I recall, 2254 was still pretty deferential. It just wasn't as deferential. Correct. Yes. I don't understand why we're reviewing de novo. Okay. Yes. Thank you. Yes. It's still deferential. De novo is the review of the district court's decision, which is going to give. We review the district court's decision. Correct. That's what. Okay. I must have misspoke. That's what I was meaning. And it still gives deference to the state court decision, which has made factual findings, especially in this case, has made a finding based on California state law. When you talked about de novo, you weren't talking about the state court decision. I was not talking about the state court decision. The district court. The district court decision, yes. That's what I'm interested in is the state court decision, because, in other words, if there's a procedural bar that the state has waived, and we now as the appellate court have the choice, as the federal court has the choice of either reviewing it without any of the deference that AEDPA would have us give to the state court decision or review it de novo without any deference, just applying constitutional principles. So we don't have to look at the Supreme Court's precedent in determining whether the state court got it wrong or not. So my question to you was, shall we just go ahead, other than, I guess, sufficiency of the evidence, and just apply constitutional principles as opposed to looking to see whether the state court decision was contrary to an unreasonable application of Supreme Court precedent? Well, the court would look at whether it followed Supreme Court precedent, but giving some deference to the state court's decision, which had analyzed these decisions. And why is that? Because we would only do that if the state court adjudicated the claim on the merits, which means it was fairly presented. It was presented to the state court, and the state court either ruled on it or dismissed all of the claims. Correct. In fact, if there's no decision from the state court, well, there has to be a state court. I need to look back, and I apologize, of what claims were exactly brought in the lower court in the various habeas petitions he filed and the petitions for review and all the habeas petitions he filed in the trial court, the district court, and the Supreme Court to see. But in any event, I think it will all be resolved because with this claim and with all the claims besides the sufficiency of the evidence, if the court just does apply constitutional law, there's no violation in any of them regardless. I know I'm ducking your question, but I don't have the answer for you right now, and I'm just saying it doesn't matter. I'll just go out there and say it doesn't matter because here what they're asking for with the college of construction was presented. Same thing with the change of venue, which I'll address briefly. I'd like to just counsel mention that at arraignment they all wore the armbands, the deputies. That was at arraignment. That wasn't at anything that happened during the jury trial. And the magistrate judge made findings that in the two memorial services for the slain officer, there was one of 200, one of 700, they were all primary law enforcement officers, and there's no evidence in the record that any of the potential jurors attended that. And the court had made a finding here. This is on the excerpt of record, page 8, which is the magistrate judge's findings and recommendations. I'm sorry, it's page 29. He says, It is true that the vast majority of potential jurors in Petitioner's jury pool had read something about the case in the newspaper or seen television coverage of the case. However, a large number of these jurors were subject to peremptory challenges, and almost all of them indicated they could not remember any details about the news coverage. And this is in stark contrast to the Daniels case where the court found presumed prejudice. And I'd like to point out that Petitioner's only looking for presumed prejudice in this case. They state that in their opening brief, which the Daniels court held is reserved for extreme circumstances. In the Daniels case, 87% of the jury pool recognized the case from media, and 66% or two-thirds recalled specific facts about the case, and we just don't have that here. The only parallel we have in that case is in Daniels there's two murdered police officers, and here we have one murdered police officer. So there's the death of a peace officer. But Deputy Mielbeck had been on the force for six weeks. He did not even live in the county. He'd only been on the force for six weeks before this tragic incident took place, and Petitioner himself was basically an unknown in the community. Neither person had any prominence as far as everyone in the community knowing about them. There was no evidence of any citizens deluging the police with offers of assistance or money. There were no editorials calling for the execution in this case. And some of the news coverage was actually favorable. The special circumstances of lying in wait had been not found true at the preliminary hearing, as well as a case of aggravated mayhem. Also, some newspaper articles listed Petitioner's mental defects and problems he had had in the health care system, and actually present this case of a system where the mental health system had failed him in that case, and his brother and Petitioner also claimed his innocence in this case. Your Honors, I see that I'm out of time. So if the Court has no further questions, Respondents would just ask that this Court affirm the decision of the lower court. Thank you very much. Thank you, Counsel. Counsel, you ran through all your time, but why don't you take another 30 seconds if there's something you'd like to say. Just to point out a clerical mistake on the point, Your Honors. In my reply brief on page 14, in the second paragraph, I made a cite to the ER that's incorrect, and I just wanted to correct it. I cited ER 7071, and it should be 202 through 204. It may not be important, but I wanted to point it out. Thanks. Appreciate that. Thank you. Peterson v. Roe is submitted, and we're adjourned until 9 a.m. tomorrow.
judges: Noonan, Kleinfeld, Ikuta